IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Cr. No. 07-52 Erie |
| | ) | (Civ. No. 12-61 Erie) |
| JASON SCALISE, | ) | |
| | ) | |
| Petitioner. | ) | |

## OPINION and ORDER ON DISCOVERY MOTIONS

Petitioner Jason Scalise has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 filed at Criminal No. 07-52 Erie. (ECF No. 86). The government filed a Response to the Motion (ECF No. 89) and, in addition, a Motion for Discovery of Attorney-Client Records (ECF No. 88).

Petitioner responded to the government's discovery motion (ECF No. 90) and subsequently filed his own Motion for Leave for Conduct Discovery (ECF. No. 93). The government responded to Petitioner's discovery motion (ECF No. 94), to which the Petitioner filed a Reply (ECF No. 99). Finally, Petitioner filed a motion (ECF No. 96), which we granted, requesting that he be permitted to delay filing a Reply to the government's Response to his motion to vacate until after the Court resolves the parties' discovery motions. For the reasons explained below, we will grant in part both parties' motions for discovery, as well as Petitioner's request for a discovery conference. Each side will be directed to identify information in its possession that is properly discoverable in accordance with this opinion. Any remaining disputes will be addressed at the discovery conference.

## I. Background

A federal grand jury indicted the Petitioner, Jason Scalise, in November 2007 for receiving child pornography, in violation of 18 U.S.C. § 2252 (a)(2) and (b)(1), and possessing child pornography, in violation of § 2252 (a)(4)(B) and (b)(2). Indictment (ECF No. 16). Petitioner pled guilty to both counts on January 20, 2009 and was sentenced, on August 4, 2009, to 168 months of incarceration at Count One and 120 months at Count Two, to run concurrently with Count One, in addition to ten years of supervised release. Petitioner's Motion to Vacate, Set Aside or Correct Sentence (ECF No. 86). This sentence represented a variance from the guidelines range of 210 to 262 months, which was calculated based on an offense level of 37 and a criminal history of I. Id. There was no plea agreement. Id. Petitioner appealed his sentence, which the Third Circuit affirmed in a non-precedential opinion filed October 27, 2010 and entered on the docket as document 77-2 on November 18, 2010. Petitioner then appealed to the Supreme Court which denied certiorari on February 28, 2011. Gov't's Response to Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 89).

On February 28, 2012, Petitioner filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence based, in part, on claims that his Sixth Amendment right to effective assistance of counsel was violated by trial counsel Timothy J. Lucas's alleged conflict of interest, as well as counsel's failure to introduce potentially mitigating evidence regarding Petitioner's Asperger's Syndrome. The alleged conflict arose from an investigation by the IRS and the United States Attorney's Office into Mr. Lucas's failure to pay a significant amount of tax from 1996 through 2006, an investigation about which Petitioner was not informed. Motion to Vacate at 23.

While Petitioner's original criminal case was pending, Mr. Lucas was under investigation for withholding payment of taxes to the United States. This was not Mr. Lucas's first encounter with the IRS. United States v. Lucas, Cr. No. 92-19 Erie. In 1993, he was convicted in this Court of a misdemeanor tax offense and sentenced to three months in jail. Id. In his most recent case, Mr. Lucas failed to remit to the IRS an amount stipulated at $329,704, for the 1996 to 2006 tax years. Transcript of Entry of Plea, August 4, 2010, United States v Lucas, Cr. No. 10-45 Erie.

On or about July 24, 2007, prior to undertaking representation of Petitioner, Mr. Lucas became aware that he was under criminal investigation for non-payment of taxes. Gov't's Response to Motion to Vacate. The investigation was conducted by the Internal Revenue Service, which first recommended prosecution in a letter dated June 12, 2009.

The matter was then referred to the Justice Department's Tax Division. Gov't's Response to Motion to Vacate. In early September 2009, the Tax Division referred the investigation to the United States Attorney's Office for the Western District of Pennsylvania. Id. The referral letter referenced the letter of June 12, 2009, noted above. Id. The United States Attorney's Office then contacted Mr. Lucas on or about September 14, 2009 to inform him that the United States Attorney's Office was now in charge of the investigation. Id. Mr. Lucas then ceased representation of all of his clients in federal criminal cases, as advised by the United States Attorney's Office. Id. Mr. Lucas pled guilty on August 4, 2010, pursuant to a plea agreement, to one count of evasion of payment of taxes in violation of 26 U.S.C § 7201. Id. On January 6, 2011 he was sentenced to twelve months and one day in prison, below the guidelines range of 21 to 27 months. Id.

Petitioner alleges that this tax investigation created a conflict whereby Mr. Lucas may have been caused to "temper his defense of Mr. Scalise" in hopes of finding leniency in his own

case. Petitioner's Reply to Gov't's Response to Motion for Leave to Conduct Discovery at 2 (ECF No. 99). On April 3, 2012, the government filed a motion for discovery of attorney-client records, and, on April 20, 2012, Petitioner moved for leave to conduct discovery into the specifics of the investigation into Mr. Lucas's failure to pay taxes, in order to fully develop the ineffective assistance of counsel claim.

## II.     Standard for Granting Discovery

Rule 6(a) governing proceedings under Section 2255, provides that a "judge may, for good cause, authorize…discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." A petitioner seeking discovery under § 2255 must show good cause "by setting forth specific allegations which, if fully developed, would entitle him or her to the writ." Lee v. Glunt, 667 F.3d 397, 404 (3d Cir. 2012); *see also* Bracy v. Gramley, 520 U.S. 899, 908-09 (1997); Harris v. Nelson, 394 U.S. 286, 300 (1969). While the allegations must be specific, they need not be "supported by solid evidence." Bracy, 520 U.S. at 908. Upon a showing of good cause a petitioner is entitled to discovery, but the court maintains discretion as to the scope. Williams v. Beard, 637 F.3d 195, 209 (3d Cir. 2011).

Determining whether Petitioner has stated specific allegations that might entitle him to the writ requires looking at the underlying requirements for a conflict of interest claim. Here, Petitioner "must demonstrate that an actual conflict of interest adversely affected [Mr. Lucas's] performance." U.S. v. Morelli, 169 F.3d 798, 810 (3d Cir. 1999) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)); *see also* Mickens v. Taylor, 535 U.S. 162, 171 (2002). An actual conflict may be shown by a divergence of interests "with respect…to a course of action." Morelli, 169 F.3d at 810 (quoting U.S. v. Gambino, 864 F.2d 1064, 1070 (3d Cir. 1988)).

4

Thus, to obtain discovery, Petitioner must advance specific allegations that a divergence

of interests with Mr. Lucas as to a given course of action adversely affected Mr. Lucas's

performance.

## III. Discussion

### A. Petitioner's Motion

We first address Petitioner's discovery request. Petitioner requests information regarding

tax collection efforts, communications between the IRS and Mr. Lucas, communications between

the United States Attorney's Office for the Western District of Pennsylvania and Mr. Lucas,

communications between the United States Attorney's Office and the IRS Criminal Investigation

Division, communications between the United States Attorney's Office and the Tax Division of

the United States Department of Justice, and non-public records of proceedings against Mr.

Lucas in the District Court with the exception of the presentence report.

### 1) Actual Conflict

Petitioner meets the good cause standard for alleging conflict as defined in Bracy and

Lee. In his underlying § 2255 motion, Petitioner alleges, *inter alia*, that Mr. Lucas "failed to

investigate" Petitioner's mental health problems, and did not adequately contest the presentence

report and sentence, because Mr. Lucas desired to induce the United States Attorney's Office to

treat him more favorably. Motion to Vacate. The United States Attorney's Office for the

Western District of Pennsylvania prosecuted both Mr. Lucas and Petitioner. Both parties agree

that as soon as the United States Attorney's Office informed Mr. Lucas that the investigation had

been referred to its office, an actual conflict was present. *See, e.g.,* U.S. v. Levy, 25 F.3d 146,

156 (2d Cir. 1994); U.S. v. McLain, 823 F.2d 1457, 1463-64 (11th Cir. 1987). In fact,

approximately one month after Petitioner was sentenced, the United States Attorney's Office

advised Mr. Lucas to withdraw from his criminal cases, and he did so. Gov't's Response to Motion to Vacate at 28.

In response to Petitioner's discovery request, the government argues that since the investigation was still under the jurisdiction of the IRS and the Tax Division of the Justice Department throughout the pendency of Petitioner's proceedings, no conflict existed. Id. at 5.

This argument fails to show that Petitioner is not entitled to discovery. The documents requested by Petitioner might demonstrate, as Petitioner alleges, that Mr. Lucas was sufficiently aware of the likelihood of an imminent referral to the United States Attorney such that a conflict existed just as if the United States Attorney already controlled the investigation. As the government observes, Mr. Lucas "knew his unpaid tax debt and the strength of the government's case." Id. With an outstanding tax debt of over $300,000, Mr. Lucas likely knew that the investigation would proceed to prosecution, and it is plausible that he may have considered tempering his defense in order to placate the United States Attorney. While the evidence currently available only indicates a potential conflict, discovery would allow Petitioner to fully develop the evidence to establish a conflict. As such, Petitioner has properly alleged an actual conflict, namely that Mr. Lucas had a personal interest that was "inconsistent…with [that] of his client," Gov't of V.I. v. Zepp, 748 F.2d 125, 135 (3d Cir. 1984), which caused a divergence of interests with respect to Mr. Lucas's defense of Petitioner. Morelli, 169 F.3d at 810.

### 2)     Adverse Effect

While Petitioner has shown the plausibility of an actual conflict, in order to obtain discovery he must also properly allege that this conflict adversely affected his counsel's performance. In Bracy, the Supreme Court ordered discovery where the petitioner alleged an understanding between the corrupt trial judge and his counsel to allow his trial to proceed

quickly so as to camouflage the judge's previous bribes. 520 U.S. at 908. The <u>Bracy</u> Court

reasoned that discovery was warranted because the petitioner's allegation, while "only a

theory...not supported by any solid evidence," specifically indicated how bias may have

impacted his case. <u>Id.</u> at 908-09. This was so even if the petitioner was unable to ultimately

obtain the relevant evidence. <u>Id.</u> at 909.

Here, Petitioner specifically alleges an actual effect of the conflict, namely that Mr. Lucas

tempered his defense in order to curry favor with the United States Attorney's Office.

Petitioner's Reply to Response to Petitioner's Discovery Motion at 2. It is undisputed that Mr.

Lucas neither investigated Petitioner's Asperger's syndrome, nor argued for mitigation on that

basis. Furthermore, Mr. Lucas pled guilty pursuant to a plea agreement with the government and

received a below guidelines sentence, despite the fact that this was his second conviction for

failure to pay taxes. <u>United States v. Lucas</u>, Cr. No. 10-45 Erie at ECF No. 30. While a

connection between Mr. Lucas's alleged failures of defense and the leniency shown toward him

in his own proceeding is "only a theory...not supported by any solid evidence," and Petitioner

may well be "unable to obtain evidence sufficient" to demonstrate adverse effect, this does not

defeat a discovery motion. <u>Bracy,</u> 520 U.S. at 908-09. Though the discovery may turn out to be

fruitless, Petitioner has properly alleged an actual conflict that adversely affected him.

### 3)    Scope of Discovery

As noted above, Petitioner requests information regarding tax collection efforts,

communications between the IRS and Mr. Lucas, communications between the United States

Attorney's Office for the Western District of Pennsylvania and Mr. Lucas, communications

between the United States Attorney's Office and the IRS Criminal Investigation Division,

communications between the United States Attorney's Office and the Tax Division of the United

States Department of Justice, and non-public records of proceedings against Mr. Lucas in the

District Court with the exception of the presentence report. "Rule 6(a) [is] clear that the scope

and extent of...discovery is...confided to the discretion of the District Court," Bracy, 520 U.S. at

909.

### a. Tax Collection Information

Petitioner's first request is for:

> All information regarding the IRS's efforts to collect tax due and owing from trial counsel, from January 1, 2007, through September 1, 2009, including, but not limited to, information regarding the garnishing of money from trial counsel's accounts, placing liens on his outside legal contracts, and sending letters to his private clients asking that they remit payment directly to the IRS.

Petitioner's Motion for Discovery at 8. The Federal Rules of Civil Procedure provide that parties

"may obtain discovery regarding any non-privileged matter that is relevant to any party's claim

or defense." FED.R.CIV.P. 26(b)(1). While the amount of tax loss caused by Mr. Lucas is

already established, the information requested is relevant because it might show the vigor with

which Mr. Lucas was pursued. Mr. Lucas certainly knew the magnitude of the amount owed, but

the strength of the IRS's attempts to pursue the money would have allowed him to gauge more

precisely the likelihood that they would refer the case for prosecution. Furthermore, though the

government points to the sensitive nature of the information requested, Gov't's Response to

Petitioner's Discovery Motion at 5-6, this information is likely no more sensitive than the

information about Mr. Lucas's tax troubles that is already publicly available from the

proceedings in his case. Nevertheless, Petitioner may access this information only for purposes

of the present litigation. He may not disclose any information about Mr. Lucas which is not

public to anyone not involved in this litigation.

### b. Tax Investigation Information

Petitioner's second request is for:

> All records of oral and written communication between the IRS and trial counsel, or trial counsel's representative, from January 1, 2007 through September 1, 2009, regarding the IRS's efforts to collect tax due and owing, the IRS's referral of the matter to the Criminal Investigation Division [IRS-CID], and the IRS's recommendation of the matter for prosecution.

Petitioner's Motion for Discovery at 9. This information is relevant for reasons substantially similar to the tax collection information, insofar as they concern Mr. Lucas's ability to gauge the likelihood of prosecution. Furthermore, this information might demonstrate that, prior to Petitioner's sentencing, Mr. Lucas was substantially certain that his case might be referred to the United States Attorney's Office, thereby increasing the likelihood that he would allegedly attempt to placate that office.

### c. Communications Between Mr. Lucas and the United States Attorney

Petitioner's third request is for:

> All records of oral and written communication between the United States Attorney's Office for the Western District of Pennsylvania and trial counsel, or trial counsel's representative, from January 1, 2007, through September 1, 2009.

Petitioner's Motion for Discovery at 9. This information, if available, is clearly relevant to the issue of whether Mr. Lucas had a conflict prior to Petitioner's sentencing in August 2009. While the Tax Division of the Department of Justice did not authorize prosecution of Mr. Lucas until September 2, 2009, the letter doing so made reference to a letter dated June 12, 2009 from the IRS's Special-Agent-in Charge, Pittsburgh Field Office, recommending prosecution. Though the government disclaims any knowledge of communications between the United States Attorney and Mr. Lucas prior to September 14, 2009, Gov't's Response to Petitioner's Discovery Motion, if the June 12th letter was communicated to Mr. Lucas prior to Petitioner's sentencing, this could

go a long way in demonstrating a conflict.

> ### d. Communications Between the IRS-CID, the Tax Division of the United States Justice Department, and the United States Attorney

Petitioner's fourth and fifth requests are for:

> All records of oral and written communication between the United States Attorney's Office for the Western District of Pennsylvania and the Criminal Investigation Division of the IRS regarding this matter from January 1, 2007, through September 1, 2009.

> All records of oral and written communication between the United States Attorney's Office for the Western District of Pennsylvania and the Tax Division of the United States Department of Justice, from January 1, 2007, through September 1, 2009.

Petitioner's Motion for Discovery at 9. These are particularly relevant, because they could show that United States Attorney's Office was apprised of the case against Mr. Lucas earlier than the current record conclusively indicates. If the United States Attorney's Office was aware that the investigation against Mr. Lucas had a substantial likelihood of proceeding while Petitioner's sentencing was pending, this could serve to establish the conflict that Petitioner alleges.

> ### e. Non-Public Records from Proceedings Against Mr. Lucas

Petitioner's sixth request is for:

> All records of proceedings in the United States District Court for the Western District of Pennsylvania relating to the investigation and prosecution of trial counsel that do not appear on the publicly available docket of *United States v. Timothy J. Lucas*, No. 1:10-cr-00045...including the issuance of search warrants, arrest warrants, or subpoenas, but [not including] the presentence report.

Petitioner's Motion for Discovery at 9. As this request is quite broad, we will give Petitioner access only to warrants and subpoenas, which he specifically requested. These are directly relevant as there might be, for example, a search warrant which was not executed, or a subpoena

that was not served, because of Mr. Lucas's cooperation in the investigation. This would provide strong evidence of a conflict of interest.

### 4) Discovery Granted In Part

Because Petitioner has shown good cause, we will grant, in part, his discovery motion. We will direct that counsel for the government provide counsel for Petitioner and the Court with a list of the information in its possession that is subject to discovery consistent with this Opinion.

### B. Government's Motion for Attorney-Client Records

We now turn to the government's motion. The government moves for discovery of attorney-client records in order to defend against Petitioner's claim of ineffective assistance of counsel. Gov't's Motion for Discovery. Petitioner concedes that he has waived the privilege with regard to certain unspecified information, and requests a conference to resolve the government's motion. Petitioner's Response to Gov't's Discovery Motion at 5.

Rule 6(a) governing § 2255 motions requires the government to show good cause before discovery is permitted, and this Court maintains discretion as to the scope of the discovery. Williams, 637 F.3d at 209. If good cause is shown, The Federal Rules of Civil Procedure require that the information requested be both relevant and not privileged. FED.R.CIV.P. 26(b)(1). Attorney-client privilege is considered waived when a client's claim places the "advice of counsel...in issue." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994). A claim of ineffectiveness of counsel puts advice of counsel in issue, impliedly waiving the privilege. U.S. v. Pinson, 584 F.3d 972, 977-78 (10th Cir. 2009); *see also* Hunt v. Blackburn, 128 U.S. 464, 470-71 (1888). The waiver is limited to conversations that bear on the strategic choices at issue. Johnson v. Alabama, 256 F.3d 1156, 1178 (11th Cir. 2001); *but see*

Bittaker v. Woodford, 331 F.3d 715, 716 (9th Cir. 2003) (indicating that the implied waiver extends to all communications between the client and the allegedly ineffective lawyer).

By raising a claim of ineffective counsel, Petitioner has required the government to defend the actions of a third party. The government clearly meets the good cause standard for obtaining some amount of discovery of Mr. Lucas's file in order to defend against Petitioner's ineffective assistance of counsel claim. As such, the government meets the Rule 6(a) burden.

The government also meets the requirement of Rule 26(b)(1) of the Federal Rules of Civil Procedure that the discovery requested be relevant. FED.R.CIV.P. 26(b)(1). The government is defending Petitioner's claims that Mr. Lucas's representation was ineffective and it is hard to imagine something more relevant to an attorney's representation than his case file.

While Petitioner concedes that he has impliedly waived some amount of privilege by filing a claim of ineffective assistance, Petitioner's Response to Gov't's Discovery Motion at 5, this waiver plainly does not cover Mr. Lucas's entire case file. The implied waiver only extends to information in the file about communications regarding the strategy at issue. Johnson, 256 F.3d at 1178. Petitioner concedes that he has "waived the privilege with respect to certain information contained in the file" but has not identified the information. Petitioner's Response to Gov't's Discovery Motion at 5. We will direct that counsel for Petitioner provide the government, and the Court, with a list of the information in its possession that Petitioner concedes is properly subject to discovery due to Petitioner's having waived the privilege.

**IV. Conclusion**

For the reasons stated above, we will grant in part both parties' discovery motions. Each counsel shall provide to opposing counsel a list of discoverable items consistent with this Opinion. A discovery conference shall be set, at which the parties may address any remaining disputed discovery issues.

Accordingly, the following Order is hereby entered.

AND NOW, to-wit, this __21st__ day of __June__ 2012, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. Petitioner's Motion for Leave to Conduct Discovery is GRANTED in part as set forth in this Opinion.

2. The government's Motion for Discovery is GRANTED in part as set forth in this Opinion.

3. Counsel for the government is hereby directed to provide counsel for Petitioner and the Court with a list of the information in its possession that is subject to discovery consistent with this Opinion no later than July 3, 2012.

4. Counsel for Petitioner is hereby directed to provide counsel for the government and the Court with a list of the information in its possession that Petitioner concedes is properly subject to discovery because Petitioner has waived the privilege no later than July 3, 2012.

5. A discovery conference is hereby set for July 19, 2012, at 11:30 a.m. in Courtroom 8A, United States Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania.

Maurice B. Cohill, Jr.,
Senior United States District Court Judge